# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) ) | |
| Plaintiff, ) ) | CIVIL ACTION NO. 1:20-CV-0610 (FJS/DJS) |
| v. ) ) | |
| CCC GROUP, INC. ) ) | **COMPLAINT** |
| Defendant. ) ) | **Jury Trial Demanded** |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race and to provide appropriate relief to Charging Party Gary A. Williams and other similarly aggrieved Black employees who were adversely affected by such practices. As alleged with greater particularity below, the Equal Employment Opportunity Commission alleges that Defendant CCC Group, Inc., which operated a construction site in Ravena, New York, violated Title VII by subjecting Williams and other similarly aggrieved Black employees to racial harassment, and by creating and maintaining a hostile work environment because of their race (Black).

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII"), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of New York.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant CCC Group, Inc. ("Defendant"), a Texas corporation that operated a construction site in the Ravena, New York, was doing business in the State of New York and the Town of Coeymans, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Gary A. Williams filed a charge of discrimination with the Commission alleging violations of Title VII by Defendant.

7. On January 23, 2020, the Commission issued a Letter of Determination notifying Defendant that the Commission found reasonable cause to believe that Defendant violated Title VII and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the unlawful employment practices described in the Letter of Determination.

9. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. On March 24, 2020, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. Since at least May 2016, Defendant has engaged in unlawful employment practices at Defendant's construction site located in Ravena, New York, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000(e)-2(a)(1). These unlawful practices include, but are not limited to, the following:

a. Defendant has engaged in race discrimination against Williams and other Black employees by subjecting them to severe or pervasive racial harassment, and by creating and maintaining a hostile work environment, because of their race (Black).

b. Williams, a Black man from Gallion, Alabama, was subjected to unlawful discrimination while working for Defendant as an Ironworker Journeyman from May 2016 to November 2016.

c. Other Black employees were also subjected to unlawful discrimination while employed by Defendant.

d. White Foremen who supervised Black employees monitored those Black employees' work, assigned them job tasks, conducted performance reviews, and decided who was promoted, hired, and fired.

e. Foreman Ronald Verdilova unilaterally reassigned Williams from another crew to his crew, ordered other Foremen around, spoke before other Foremen at all-hands morning

meetings, and was one of few of Respondent's employees permitted to drive his truck on the Ravena jobsite.

 f. White Foremen and co-workers openly and notoriously subjected Williams and other Black employees to numerous racist, stereotypical, and demeaning comments, slurs, jokes, and threats. The harassment included but was not limited to the following:

  i. A Black Welder Journeyman who worked for Defendant in May 2016 heard White employees refer to Black people as "gorillas" and "monkeys," and speak of "Getting rid of those niggers." Another White employee said, "Y'all gorillas are going to be gone soon," meaning that the Welder and other Black employees would not last long on the jobsite;

  ii. Foreman Ronald Verdoliva and White employees used an open radio channel to order Williams to perform tasks by referring to his race, including telling him to "Hurry your Black ass up" and "Get your Black ass down here," and calling him "boy";

  iii. The radio channel was broadcast throughout the construction site, including to various supervisors and employees;

  iv. Black employees observed and heard the racist abuse hurled at Williams and other Black employees, for example hearing Verdoliva say, "I'll talk to you however the fuck I want to" because Williams was "beneath" him;

  v. Verdoliva and Williams' White co-workers repeatedly referred to Williams as "Chicken George," a reference to a character from the TV series *Roots*;

  vi. Verdoliva repeatedly called a Black Laborer "Buckwheat," a racial slur that originated as the name of a character in the *Our Gang* films of the 1930s and 1940s;

  vii. White supervisors and co-workers often called Black employees "boy" when getting their attention or ordering them to do something, for example, by saying, "Hey, boy.";

4

  viii.  Verdoliva made racist observations about Black men, for example, "You Black guys always take forever to do a job";

  ix.  White supervisors and co-workers often called Black employees lazy and complained that they took too long to complete job tasks;

  x.  White supervisors and co-workers often made prejudicial comments about Black men being better suited for menial labor than jobs that required skill and intelligence, which should be given to White employees;

  xi.  White supervisors and co-workers made racist jokes;

  xii.  A White Welder Journeyman sent a text message to Charging Party containing an image of "Colonel" Harland Sanders (founder of Kentucky Fried Chicken) that read, "Black Lives Matter. I got Chicken to Sell";

  xiii.  That White Welder Journeyman also texted Charging Party an image of a White man giving a "thumbs up," over which was superimposed the text: "If I had a dollar for every racist thing I've said, some Black motherfucker would probably rob me.";

  xiv.  A White Equipment Operator repeatedly boasted to Williams that the Operator's ancestors had owned slaves and given their last name to slaves;

  xv.  Verdoliva asked Williams if he wanted to go trick-or-treating with him, stating: "You don't even have to dress up. I will dress in white and put a noose around your neck and we'll walk down the street together";

  xvi.  White Foreman Donald Vollmar asked Williams over the company radio channel, "What's your twenty?" (meaning "Where are you?") and ordered Williams to come to an area on the construction site. When Williams arrived, Vollmar had tied a rope into a noose and laid it on the ground to ensnare Williams. As Williams approached, Vollmar dragged the noose on

the ground in front of Williams. Vollmar and other White employees laughed at the spectacle of a White supervisor attempting to string up his Black subordinate with a rope tied into a noose;

      xvii.      Verdoliva and the Equipment Operator commented that Williams walked funny because Black slaves had to get used to walking while picking cotton and putting it in a bag;

      xviii.      Verdoliva made stereotypical comments about Black men being physically stronger and more suited for menial labor, including but not limited to saying, "My god, you Black guys are strong." Other White supervisors and co-workers made similar comments;

      xix.      White employees made derogatory comments to a White female employee because she was friends with Black co-workers;

      xx.      White employees told Williams racist jokes, such as, "What word begins with 'N' and ends with 'R'?" Answer: "Neighbor. . . . You thought I was going to say something else, didn't you?"; and

      xxi.      A White Welder Journeyman told other White employees, in front of Williams, that he could not be seen outside of work with Williams because it would negatively impact his ability to join a White supremacist group.

      g.      White supervisors subjected numerous Black employees to harsher working conditions compared to their White colleagues, including assigning more physically demanding jobs and giving harsher and disproportionate scrutiny and criticism to Black employees' work. This different treatment included but was not limited to the following:

      i.      At all-hands morning meetings Black employees were regularly given more physically taxing, dangerous, and menial work than White co-workers and criticized for their lack of work ethic and lack of skill;

    ii.  White supervisors made prejudicial comments about Black men being better suited for menial labor than jobs that required skill and intelligence, which should be given to White employees;

    iii.  White supervisors assigned skilled Black employees to menial tasks like pouring concrete and cleaning up after others' work, rather than skilled jobs like ironworker, rigger, welder, and boilermaker, which were instead given to similarly qualified White employees;

    iv.  White employees were given less physically demanding jobs like reviewing and placing stickers on a completed welding job; Black employees on the same crew were given dangerous and difficult tasks such as welding high up in the air on the outside of a building under construction;

    v.  White supervisors assigned Black employees to work outdoors (including in the cold winter months of Upstate New York) while comparable White colleagues were assigned to indoor tasks;

    vi.  White employees were permitted to take longer and more frequent breaks and given a longer time to finish equivalent tasks than comparable Black employees;

    vii.  Groups of White employees were repeatedly assigned to jobs that required one employee to complete; on the other hand, single Black employees were repeatedly given physically taxing jobs appropriate for two or more employees and accused of laziness if they asked for additional help; and

    viii.  Black employees were subjected to greater and disproportionate scrutiny of their work product.

      h.      Williams and other Black employees repeatedly objected to racial harassment by White supervisors and repeatedly complained to Defendant about the racial harassment on its worksite, but Defendant did nothing and the harassment continued unabated.

      13.      The unlawful employment practices complained of in paragraph 12 above were intentional.

      14.      The unlawful employment practices complained of in paragraph 12 above were done with malice or with reckless indifference to the federally protected rights of Williams and other similarly aggrieved Black employees who were adversely affected by such practices.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

      A.      Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, attorneys, and all persons in active concert or participation with it, from maintaining a racially hostile work environment.

      B.      Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for Black employees and that eradicate the effects of its past and present unlawful employment practices.

      C.      Order Defendant to make whole Williams and other similarly aggrieved Black employees by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraph 12 above, in amounts to be determined at trial.

      D.      Order Defendant to make whole Williams and other similarly aggrieved Black employees by providing compensation for past and future nonpecuniary losses resulting from the

unlawful employment practices complained of in paragraph 12 above, including emotional pain, suffering, inconvenience, and humiliation, in amounts to be determined at trial.

  E. Order Defendant to pay Williams and other similarly aggrieved Black employees punitive damages for its malicious and reckless conduct, as described in paragraph 12 above, in amounts to be determined at trial.

  F. Grant such further relief as the Court deems necessary and proper in the public interest.

  G. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Dated: June 2, 2020

  Buffalo, New York

        Respectfully submitted,

        SHARON FAST GUSTAFSON
        General Counsel

        GWENDOLYN YOUNG REAMS
        Associate General Counsel

        EQUAL EMPLOYMENT OPPORTUNITY
        COMMISSION
        131 M Street, N.E.
        Washington, D.C. 20507

        JEFFREY BURSTEIN
        Regional Attorney
        jeffrey.burstein@eeoc.gov

        NORA CURTIN
        Supervisory Trial Attorney
        nora.curtin@eeoc.gov

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004

/s/ *James E.B. Bobseine*
Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Buffalo Local Office
300 Pearl Street, Suite 450
Buffalo, NY 14202
Tel: 716-431-5023
Fax: 716-551-4387
Email: james.bobseine@eeoc.gov